Other weapons Good morning, Your Honours. My name is Selina Kanae-Altof from the Office of the Federal Defender. I represent the plaintiff, Ms. Aquino. The first issue I want to address is whether Ms. Aquino was untruthful with her probation officer as a district court. On this record it's clear that Ms. Aquino was not untruthful with the probation officer because the only evidence we have is the probation officer asked, did you consume anything illicit? Illicit being the key word and Ms. Aquino denied it. And in fact that turned out to be true. The test was presented... Or at least that proven to be false. Well that's correct but on the scant evidence we have there's no evidence to say that whatever she smoked on that particular day was illicit. What more do you contend the government would need to show to demonstrate that the particular spice that Ms. Aquino was smoking was illicit? They would need to show a U.A. that... What? I'm sorry, a urinalysis. A urine specimen that tested positive for something that was either a controlled substance or at least a controlled substance analogue. So and frankly in this case it could have possibly been done. I mean I suppose what happened from what I can gather is that the lab tested for 15 specimens. It came back negative for that and then the urine sample was discarded before this broader test could be done which tested for 27 compounds. So I understand that the judge found Ms. Aquino I guess had this material omission as she called it and that was what she used to rely upon the fact that Ms. Aquino was untruthful. So where does all this end up? You agreed in the end that the three-month sentence was appropriate. Under the facts that the judge found, yes. So you thought you were agreeing only on the facts that he found? In other words, he found other facts which also would have subjected her to a revocation. That's correct. In other words, right, so Ms. Aquino admitted to other violations that are not at issue. Right. She would have been violated nonetheless. Right. So your position is that your agreement was only assuming the correctness of the lie finding. I don't understand your question. In other words, you got up during the hearing and you said you agree with the probation officer that three months is appropriate. Yes. Right. But you're saying that that was only on the assumption that she was found to have committed this violation as well as the others. That's correct. Counsel, let me ask you this. She's already served the three months. She has. So what relief are you really seeking here? Let's say I agree with you that the statement that was made illicit, a truthful answer would have been no, or at least we can't prove otherwise. But she's served the three months, so let's say we agree with you when we send this back, putting aside condition nine and the potential vagueness of that condition, is it a shorter term of supervised release? I suppose it could be. If you're looking at sentencing as a bundle or package altogether, I agree with you that the prison time I think is really moot at this point. But I think the harm here was that for Judge Mulway in particular, I've appeared in many violation hearings before her, to her lying to the probation officer is incredibly severe. She even says that in the excerpts of records, she says that it was the most serious thing because if you're not truthful with your probation officer, the whole system doesn't work. So it may very well be that Judge Mulway would have given a more lenient sentence had this violation not been found to be a violation. But as to the incarceration, like I said, that's over. So if you were going to go back, you'd be asking for whatever's left on the term of her supervised release, which is, I don't know, 15 months or something like that? Something like that. And you'd be asking for 10 or 8? I mean, that's what I'm trying to understand kind of what we're doing here. To be frank, I'm not sure. I'm not sure what I would ask for if this case were remanded. But I think that takes me to the second issue, which I think is more relevant because Ms. Aquino is currently on supervision. And, you know, the problem I have with this condition is that it's vague. It's overbroad. It captures things that I don't think the judge meant to capture. And it excludes things that she meant to capture. So if, for example, we were to overrule the first part, then as to the lie, then the second part would presumably go away because it was, or might. So the main effect of a reversal as to the lying to the officer would be really to have you reopen this condition. Yes, but I also think that if the court ruled that this was unconstitutional, the special condition I'm referring to, then it would also be remanded. No, I understand that. But I was simply trying to focus on the fact that there actually is another consequence, possible consequence, of a reversal on the lying to the officer. That's correct. If it were remanded, we would also ask for the special condition to be removed by the district court at that point. Now I fully appreciate what the judge was trying to do in crafting this designer condition. As I refer to it, nobody wants Ms. Aquino smoking some unknown substance, getting into a pretty bad accident, endangering herself and her child and others. But whatever the good intent was behind the court's crafting this condition, it doesn't work. I think the court, this court, has to probably also resolve the issue of which version controls. Because the oral version differs substantially from the written version in terms of this double intent that the oral condition covers. The problem with this condition initially is that there's no real exemption of any sort. So for example, if my client decides, I want to drink a Red Bull because I've heard it mimics speed, then she is guilty of a violation for drinking a Red Bull. Similarly, if she drinks a Red Bull not because she believes it mimics the effects of speed, but because she believes the manufacturers of Red Bull intended it to mimic speed, then she's guilty of the oral version of the condition that was imposed. Should the condition be limited to controlled substance analogs? I think that is one way of resolving it. And it was only during the briefing of this issue that it became clear to me that there is in fact an attempt by Congress to target this issue of spice. So that's the controlled substance analog. But in thinking about it further, because Congress has said a controlled substance analog is to be treated as a Schedule I controlled substance, frankly the two conditions that you cannot use or possess any controlled substance and you cannot commit any federal crime. So the standard conditions we have work just as well. If the district court were intent on targeting this, I think that a condition could be fashioned, for example, you should not use or possess any controlled substance analog. And that would at least be more targeted than what the court did here. I have about three minutes left. I'd like to reserve it for rebuttal. Thank you. Good morning. May it please the court. Assistant United States Attorney Tom Brady on behalf of the United States. And if the court doesn't have any initial questions, I want to start off by saying I apologize to this court. It was my job to make sure the record was clear and it wasn't. And it made the district court's job harder and quite frankly it's making your job harder. What I should have done specifically was elicit testimony from the probation officer at that hearing as to what specifically she asked the offender on May 28, 2014. Why is your speech slurred? Why is it slow? What we do know from the record is that she asked, the probation officer asked, three questions. At least, did you consume alcohol? Did you consume any illicit drugs? Did you consume any medication? And I think the defense wants to narrow the narrative here to just whether or not the offender took an illicit drug. And I don't think that's exactly what the record supports. I think what the probation officer was trying to ask through those three or four questions was. But for this purpose it isn't what he was trying to ask. It's what he asked, right? Correct. And what he asked was those three things. We know that. Right. Why? And they all go back to the same thing. Why is your speech slurred and slow? Right. But a person who's on probation isn't necessarily, I mean, if they're obligated, their condition is to answer truthfully the question and the probation officer asks the wrong question. I mean, perhaps the probation officer suspected it was spice since that seems to be something that's, you know, in this new category of drug controlled substance related things. And maybe that was, but maybe the probation, it's not your fault. It's the probation officer's fault. Maybe the probation officer needs to say, or are you taking anything else that has the same effects as this drug without the, that you believe, take out, you believe, but ask the right question. I don't think it's your fault as much as the probation officer. Well, I think I could have developed the record. And I think, well, but what if she didn't ask that question? I mean, she put in her report the subject denied consuming alcohol, taking medication or using any illicit drugs. But then the urine sample came back. There was nothing in there. Correct. And I, and I think what the urine sample tested was for seven compounds, illegal compounds. There was an ability to test for 15, but as the court knows now, there are four over 400, I think 450 synthetic compounds that would simulate the effects of marijuana. So we are playing catch up as it, when it comes to substances like spice. And so the person who's on probation might understand that too. And maybe the probation office needs to get with it. Yes, but I think what counsel said was, was very true. And it's, I believe it's true for most instances in, in, in Judge Mulway's courtroom, your relationship, an offender's relationship with a probation officer is important. And that truthfulness, being truthful to one another is important to her. And I don't think that a probation officer needs to play 21 questions to figure out whether or not somebody is high or not with an offender. That's where it went But if they're going to rely on this particular condition, then they need, then in other words, if you'd been able to prove what she had taken, that would have been one thing, but you weren't able to. And so you relying on this truthfulness prong, which does, which either needs to be rewritten so it says what you want it to say, or he has to ask questions that get the answer that he's looking for. And what I'm suggesting to the court is maybe the probation officer did, and I just didn't elicit that through the testimony. So Judge Owens asked an interesting question. Is this case, is this moot because she's already served the prison sentence, or is there some effect on a supervised release that renders it, you're right, renders it not moot? It's a good point, and I know Justice Owens has experience in the U.S. Attorney's Office and he understands that at any time the defense can come before the court, the district court, and want to amend the terms and conditions, special terms and conditions of a release as well as the term of release. So at any time, counsel could go before the same court and say, I want to And if we reverse on that one thing, isn't there a better argument that it should be amended? I mean, if you can go at any time, I mean, don't you have a better chance of prevailing if you've just gotten your truthfulness violation reversed? Honestly, I don't think before Judge Mulway that would make a difference. Well, I know, but we're not talking about just Judge Mulway, you know? Yes. We're talking about what the role should be. I think it would provide an avenue for the court to readdress the wordiness of the condition that it's concerned with right now, yes. And certainly, counsel, I imagine you would argue, if let's say we agree with your opposing counsel here and we do send this case back because we don't believe in fact it was a lie, certainly I assume you would argue that the same term of supervised release of 21 months should apply because this is someone who is missing appointments with these various counselors. She's exercising extremely poor judgment. Whether or not it's an illicit drug or not, you know, smoking spice and driving a car with an infant is probably not a good idea. And I assume you would argue it should be the 21 months, and they're able to argue it should be less than that. I think that's where we're going here, which is why I think it's not moot, but it's just one of these things where because it was only a three-month sentence, it did make me wonder kind of what the end game here is now. But I think now I have a better understanding as to what it is. What about the condition? The substance of the condition, or the wording of the condition? Yes. The argument that it's... Overly broad. Well, or vague. Overly broad. First of all, do you agree that this is the oral version that governs? Yes, Your Honor. Okay. I believe that is true. I don't think it was unambiguous, though, but if you read the transcripts, I think that it didn't make sense, and the court's written order makes much more sense. But I do agree that the oral condition is what controls. And so your question is... Well, I've just asked you to respond to the argument that the condition is invalid in either version because it is so vague as to apply to a very wide range of benign substances. I think there's... Like coffee. I'm sorry. There's a general provision that inadvertent violations... There has to be a mens re, first of all. Established jurisprudence is that there's a presumed prohibited criminal conduct that is taking place. Somebody who's taking caffeine, somebody who's taking coffee, somebody who's taking chocolate is not going to be coming before the courts. We've had a period of time since this special condition has been in effect, and we haven't had any alleged violations of too much coffee or too much chocolate. That doesn't happen. The probation officer uses their discretion and does not charge alleged violations unless there's a presumed prohibited conduct with an element of mens re. And I think when you read this special condition... But the mens re has to be a mens re to violate the condition. If the condition isn't limited, then the mens re is not limited either. But the condition was trying to address the mimicking effects of marijuana. It seems to me, counsel, that if we do disagree with you on the first point, and I don't know what my two colleagues think about that, it seems to me that you two are both career people here in Honolulu. You guys see each other all the time in court. It seems to me you guys could go back and talk this through and figure out language for the condition that would work. And if it doesn't work, if you guys can't get it, you present it to Judge Mulway and you argue it then. Does that seem like that's a possibility? That is exactly what would happen. Okay. Do you have any other questions? No. Thank you. Thank you. You had a few minutes. Yeah, thank you. Well, so the government invites the defense to basically go and seek modification of this condition. But in reality, I mean, this is our remedy, to get some guidance from you folks as to what the judge should do. And I think Judge Mulway was inviting that remedy when she told me that I did have my avenues of remedies. He also says that there has to be some sort of mens rea attached to it that she believes. And I think that that's the problem. We have this mens rea of belief, which captures conduct that should be illicit but isn't, and vice versa. To me, the mens rea should be intentionally imbibed, imbibed controlled substance analog, or something that you really have to define what the drug is, and then the intentional use in violation of the condition. Yes, I think it has to be knowing, at least, instead of this sort of ambiguous belief. Mr. Brady also says that Ms. Aquino has been on supervision for a while and there's been no allegation that she's consumed too much coffee or sugar. But that's not the point. Just because she can comply with this condition and has been doesn't mean that it's unconstitutionally overbroad or vague. I'm curious about something. What happens if she drinks Red Bull or something like that, and there's a urine analysis? Does that come up as something? Or does it reveal that it was just Red Bull? I don't know if it would reveal that it was just Red Bull, but it would not come back as something illicit. As to Judge Owens, the question you asked Mr. Brady, which is that we can hash this out. And that's probably true. Mr. Brady and I have worked together a lot on cases, and we could. But I do believe the district court is probably looking for some guidance as to how it could capture this sort of conduct as a violation without being unconstitutional. So my solution to that would be simply the conditions we have work. The condition that she cannot use or possess any controlled substance, and that includes a controlled substance analog and the fact that she cannot commit another federal crime. That captures that conduct as well. Let me ask you this. If she were to be driving impaired, I'll use that term. I imagine Hawaii has in the vehicle code has something similar that we have in California where it doesn't have to be alcohol, doesn't have to be an illicit substance. If someone is driving impaired, that in and of itself, I can never say that, is a crime in most jurisdictions. If that were part of the federal or state law, and I assume she can't violate any conditions of state law as well, and if it was emphasized to her that she could not drive while impaired, then it would seem to me that that would take care of this problem, at least to the extent that we're concerned that she's operating a vehicle with a child involved and maybe not fully in control of her faculties. I think that's right. The Hawaii state statute has driving without due care, inattention to driving, endangering the welfare of a child. There are numerous crimes that I think what Ms. Aquino did, it would encompass that. To me, actually, I was a bit surprised that the petition wasn't amended to say conduct constituting whatever crime she may have violated, which in that case, I don't think I would have had an issue with. But such was not the case, and that's why we're here. So if the court has no further questions. We have no further questions. Thank you very much. Thank you, counsel.
judges: Wardlaw, Berzon, Owens